## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

Present: The Honorable    Philip S. Gutierrez, United States District Judge

| Derek Davis | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):    Order DENYING Plaintiff's motion to remand**

Before the Court is a motion to remand filed by Plaintiff Eduardo Garcia ("Plaintiff"). *See generally* Dkt. # 29 ("*Mot.*").  Defendant William Scotsman, Inc. ("Defendant") timely filed an opposition to the motion, *see generally* Dkt. # 30 ("*Opp.*"), and Plaintiff replied, *see generally* Dkt. # 31 ("*Reply*").  The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15.  Having considered the papers and exhibits, the Court **DENIES** Plaintiff's motion to remand.

I.    Background

On February 29, 2024, Plaintiff, on behalf of himself and all persons who worked for Defendant in California as hourly, non-exempt employees during the relevant time period, filed a class action lawsuit against Defendant in the Superior Court of California, County of Ventura. *See generally* Dkt. # 1, Ex. A ("*Compl.*").  Plaintiff's complaint alleged eight causes of action: (1) failure to pay minimum wages, (2) failure to pay overtime compensation, (3) failure to provide meal periods, (4) failure to authorize and permit rest breaks, (5) failure to indemnify necessary business expenses, (6) failure to timely pay final wages at termination, (7) failure to provide accurate itemized wage statements, and (8) unfair business practices.  *See generally id.*

On April 12, 2024, Defendant filed a notice of removal pursuant to the Class Action Fairness Act ("CAFA").  *See generally* Dkt. # 1 ("*Notice of Removal*").  Since Plaintiff did not expressly plead a specific amount of damages in the complaint, Defendant calculated its own estimate of potential damages based on Plaintiff's allegations.  *See generally id.*

On July 8, 2024, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(B)(6).  *See generally* Dkt. # 22.  On August 13, 2024, the Court granted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

Defendant's motion to dismiss and granted Plaintiff leave to amend his pleadings.  *See generally* Dkt. # 28.

Plaintiff now moves to remand, arguing that Defendant has failed to establish the amount in controversy.  *See generally Mot.*  On the same day Plaintiff filed a reply in support of this motion, Plaintiff filed a first amended complaint, alleging the original eight causes of action plus a claim for civil penalties under the Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698, et seq.  *See generally* Dkt. # 32.

II.    Legal Standard

   A.    Motion to Remand

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted).  Under 28 U.S.C. § 1441, a defendant may remove a civil action from state court to federal district court only if the federal court has subject matter jurisdiction over the case.  *See City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) ("The propriety of removal thus depends on whether the case originally could have been filed in federal court.").  The case shall be remanded to state court if at any time before final judgment it appears a removing court lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c); *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991).

   B.    CAFA

CAFA provides federal jurisdiction over class actions in which (1) the amount in controversy exceeds $5 million, (2) there is minimal diversity between the parties, and (3) the number of proposed class members is at least 100.  28 U.S.C. §§ 1332(d)(2), (d)(5)(B).  "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  While "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee Basin Operating Co. v. Owens*, 547 U.S. 81, 82 (2014), "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."  *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).  However, a court should not impose a presumption against CAFA's jurisdiction.  *See Jauregui v. Roadrunner Transp. Servs. Inc.*, 28 F. 4th 989, 993 (9th Cir. 2022) (deciding the district court was "incorrect" to meet removal with "skepticism and resistance").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

Under CAFA, a defendant removing a case must file a notice of removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," unless the defendant's assertion is contested by the plaintiff. *Id.* at 89. Where, a defendant's asserted amount in controversy is contested, then "[e]vidence establishing the amount is required." *Id.* "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy has been satisfied." *Id.* at 82. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197.

Under this system, a defendant may rely on "reasonable assumptions" to assert that the claims meet the amount-in-controversy requirement. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Ibarra*, 775 F.3d at 1197–99). As the Ninth Circuit has explained: "[I]n assessing the amount in controversy, a removal defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'" *Id.* at 925 (quoting *Ibarra*, 775 F.3d at 1200). These "assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* (quoting *Ibarra*, 775 F.3d at 1198–99). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.*

III.   <u>Discussion</u>

The parties do not dispute that there is minimal diversity and class numerosity. *See generally Mot.* The only question the Court needs to resolve is whether Defendant has adequately established that the amount in controversy exceeds $5 million.[1]

---

[1] Defendant attempts to render this motion moot, arguing that this Court already found "jurisdiction under CAFA" when ruling on Defendant's motion to dismiss. *See Opp.* 1:13–15. Although the Court did determine that Defendant had adequately established jurisdiction in its notice of removal, the standard changed once Plaintiff "contested" the amount in controversy with this motion. *See Dart Cherokee*, 574 U.S. at 89 (explaining that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," unless the defendant's assertion is contested by the plaintiff, then "[e]vidence establishing the amount is required"). Thus, the Court must conduct a deeper analysis in response to Plaintiff's motion to remand.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

A.    Defendant's Declarations

Plaintiff attacks the evidence provided by Defendant.  Plaintiff contends that Defendant did not provide "a single supporting business record" of the number of class members, shifts worked, average length of hours, average base hourly rate of pay, and 25th percentile hourly rate of pay.  *See Mot.* 5:20–6:9.  And Plaintiff claims that the evidence Defendant did provide violates evidence rules.  *See Mot.* 6, n.2.

With its removal notice, Defendant provided the Declaration of Valentín Estévez, Ph.D., *see* Dkt. # 3 ("*Estévez Decl.*"), and the Declaration of Bradley Weaver, *see* Dkt. # 4 ("*Weaver Decl.*").  Dr. Estévez works as Vice President of a consulting firm specializing in statistical consulting, and Defendant's counsel asked him to "assess the potential exposure to Defendant based on allegations raised" in Plaintiff's complaint.  *See Estévez Decl.*  ¶ 2, 5.  Dr. Estévez conducted his analysis using "timekeeping data and payroll data provided by Defendant's Counsel."  *Id.* ¶ 10.  Dr. Estévez identified that from February 29, 2020 to December 10, 2023, 505 employees worked 208,472 shifts.  *Id.* ¶ 6.  Dr. Estévez calculated the average duration of these shifts to be 8.48 hours.  *Id.*  And Dr. Estévez calculated the 25th percentile and average base hourly rates during the period to be $22.09 and $26.05, respectively.  *Id.*  Based on the data he reviewed, and the assumptions he made (outlined in his declaration), Dr. Estévez calculated Defendant's potential exposure for each of Plaintiff's claims.

Defendant also submitted the Declaration of Bradley Weaver with its removal notice.  *See generally Weaver Decl.*  Mr. Weaver is Defendant's "Director, People" and provided the following information:  Plaintiff's base hourly rate in February was $27.78, Plaintiff's base hourly rate in December 2023 was $35.95, and Plaintiff's current hourly rate of pay is $37.75.  *Id.* ¶ 5.

Plaintiff argues that both of Defendant's declarations lack foundation since they do not specifically identify which records were reviewed, they do not provide underlying records and data (e.g., spreadsheets), and they do not establish whether the records kept were reliable.  *See Mot.* 5:17–6:28, n.2.  Yet, this Court has routinely accepted similar declarations from human resources professionals and consulting firms as credible evidence to establish CAFA removal. *See Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533 ODW (JC), 2019 WL 1553664, *2 (C.D. Cal. Apr. 9, 2019) (denying remand motion when defendant relied on a declaration by a senior economist and Ph.D., from a consulting firm who was "provided payroll data" including "employee work hours, earnings, dates of employment, and locations" and testified "to such data as the average rate of pay," "the number of non-exempt employees," "the number of workweeks," and "the number of non-exempt employees whose employment ended during this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

period"); *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, *2 (C.D. Cal. Nov. 30, 2017) (denying remand where an HR business partner declared personal knowledge of business operations, had access to employment records, and thereby estimated employee numbers, workweeks, and average hourly rates); *Al-Najjar v. Kindred Healthcare Operating, Inc.*, No. CV 17-6166 PSG (FFMx), 2017 WL 4862067, at *2–4 (C.D. Cal. Oct. 26, 2017) (finding declarations from Vice President and Corporate Counsel and Payroll Projects Director that contained "general statistics gleaned from [d]efendant's records, including the number of hourly, non-exempt employees involved in this putative class action, their total number of workweeks, and their average hourly rates" to be sufficient for establishing CAFA amount in controversy); *see also Ibarra*, 775 F.3d at 1197 (emphasizing that Congress "intended CAFA to be interpreted expansively"). Moreover, Defendant supplemented their opposition to this motion with an additional declaration from Dr. Estévez, which attached a list of the records he relied on when making his calculations. Dkt. # 30, Ex. 2–3; *see Alvarez*, 2017 WL 5952181, at *2 ("Furthermore, [defendant] has submitted a supplemental declaration that provides additional information as to where she obtained her figures and how her estimates and averages were calculated.").

Plaintiff additionally argues that Mr. Weaver lacks knowledge because although he was employed by Williams Scotsman, Inc., "the two Mobile Mini entities merged into Williams Scotsman," so Mr. Weaver does not have knowledge "of anything that happened at Mobile Mini." *Mot.* 6, n.2. However, Mr. Weaver declares that his declaration is based on "direct and personal knowledge," explaining that as Director, People, he has "access to information and data . . . regarding the overall direction, control, and coordination of those operations; the pay practices and the wages paid to the Company's employees; and various personnel data . . . including information regarding its non-exempt, hourly employees in California." *Weaver Decl.* ¶¶ 1–2. Moreover, Mr. Weaver states that he is familiar with, and in possession of, the operation and business records for the Mobile Mini entities that merged into Defendant's current company. *Id.* ¶¶ 1, 3. The Court is satisfied with Mr. Weaver's level of personal knowledge as Defendant's Director, People.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

     B.   <u>Unpaid Wages and Overtime Wages</u>

After reviewing its business records, Defendant identified that during the relevant period, the putative class members worked at least 208,472 shifts, the average duration of the shifts was 8.48 hours, and the 25th percentile hourly rate during the period was $22.09. *Notice of Removal* ¶¶ 27–28. In an effort to be "conservative[]," Defendant used the 25th percentile, not average, base hourly rate and estimated 10 minutes of "off the clock" work in calculating the amount in controversy for the minimum wage claim. *Id.* ¶¶ 27–28. Thus, Defendant estimated that the amount placed into controversy by Plaintiff's unpaid minimum wage claim was at least $767,524 (0.167 hours x 208,472 shifts x $22.09). *Id.* ¶ 28. For liquidated damages, Defendant determined the average California minimum wage during the applicable period was $14.70 and thereby calculated the amount in controversy for the liquidated damages to be at least $510,756 (0.167 hours x 208,472 shifts x $14.70 per hour). *Id.* ¶ 31. For unpaid overtime wages, Defendant's business records showed that: the putative class members worked an aggregate of at least 181,364 shifts over 8 hours since February 29, 2020, that the 25th percentile hourly rate was at least $22.09 for the relevant period, and that the average daily hours worked by putative class members was 8.48 hours. *Id.* ¶ 37. Applying a rate of one hour of overtime per person per workweek, Defendant calculated the amount in controversy for Plaintiff's unpaid overtime claims to be $333,861 (181,364 shifts x 0.5 x $22.09 x 0.167 hours).[2] *Id.* ¶ 38.

Other than the evidentiary objections already discussed above, Plaintiff argues Defendant has no evidentiary support for the "assumption that each putative class member worked an hour of overtime and an hour of unpaid work each five shifts during the relevant time period" since "some employees did not work more than forty (40) hours in a week, some employees worked for less than the entire class period, and some employees worked part-time rather than full-time." *See Reply* 8:3–9. The Court first notes that Plaintiff did not raise these arguments in its motion. *See generally Mot.*; *U.S. ex rel. Giles v. Sardie,* 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."). Moreover, the Court is satisfied by the reasonable assumptions made and disclosed by Dr. Estévez, including that he used the more

_____

[2] The Court conducted its own calculations based on Defendant's underlying figures and found that Defendant's minimum wage total should have equaled $769,059 (0.167 x 208,472 x 22.09), the liquidated damages should have equaled $511,778 (0.167 x 208,472 x 14.70), and the overtime total should have equaled $334,529 (181,364 x 0.5 x 22.09 x 0.167). Since Plaintiff did not raise the slight discrepancies in Defendant's numbers (and the lower numbers provided by Defendant actually hurt Defendant's attempt to meet the necessary amount in controversy), the Court has adopted the more conservative calculations for the purposes of this order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|----------|-------------|------|---------------------|

| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* |
|-------|---------------------------------------------------|

conservative 25th percentile base hourly rate and that his overtime numbers were not based on the work weeks of each employee, but rather the specific number of employee shifts that lasted 8 hours or longer. *See Estévez Decl.* ¶¶ 17–18, 39; *see also Jauregui*, 28 F. 4th at 993 (noting that a "defendant's amount in controversy assumptions in support of removal will always be just that: *assumptions*" and at this stage, "the parties need not predict the trier of fact's eventual award with one hundred percent accuracy" (emphasis in original)).

> C.    Meal Periods and Rest Breaks

In calculating meal period violation exposure, Defendant: (1) identified that 201,634 shifts lasted longer than 6 hours, (2) used the 25th percentile base hourly rate of $22.09, and (3) assumed employees were not provided with compliant meal periods for 20% of their shifts. *See Estévez Decl.* ¶¶ 12–13 (calculating "20% times $22.09/hour times one hour per shift times 201,634 shifts" for a total of $890,819 of meal violation exposure). Similarly, in calculating rest break violation exposure, Defendant: (1) determined that the number of shifts lasting 3.5 hours or more was 207,844, (2) used the 25th percentile base hour rate of $22.09, and (3) assumed employees were not provided compliant rest breaks for 20% of their shifts. *See id.* ¶¶ 14–15 (calculating "20% times $22.09/hour times one hour per shift times 207,844 shifts" for a total of $918,255 in total rest break violation exposure).

The Court begins with Plaintiff's complaint. *See Arias*, 936 F.3d at 925 ("An assumption may be reasonable if it is founded on the allegations of the complaint."). In the complaint, Plaintiff alleges that throughout the statutory period, "Defendants maintained a systematic, company-wide policy and practice of . . . [f]ailing to provide employees with timely and duty-free meal periods." *Compl.* ¶ 4. Plaintiff adds that "Defendants *regularly* failed to provide Plaintiff and Class with both [first and second] meal periods." *Id.* ¶ 50 (emphasis added).

Plaintiff argues that Defendant's assumption of a 20% violation rate is inappropriate since Plaintiff did not specifically "allege a twenty percent (20%) violation rate for either claim." *See Mot.* 9. Plaintiff cites cases (all dated before 2016) where courts rejected the assumption that a meal period or rest break occurred one time per week. *See Mot.* 9:27–10:24. Defendant, for its part, cites to a slew of recent cases where courts upheld a 20% violation rate when plaintiff did not specify the frequency of violations or plaintiff alleged a "pattern and practice" of meal and rest violations. *Opp.* 10:12–11:6; *see e.g.*, *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-cv-00719 NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) ("Courts in this Circuit . . . have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods."); *Mendoza v. Savage Servs. Corp.*, No. 2:19-CV-00122 RGK (MAA),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

2019 WL 1260629, *2 (C.D. Cal. Mar. 19, 2019) ("When a defendant's calculation lacks factual support, courts in this district routinely apply a 20% violation rate . . . ."); *Danielsson v. Blood Centers of Pacific*, No. 19-CV-04592 JCS, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) ("Defendant's first assumption—a 20% violation rate for meal and rest breaks during the putative class period—is reasonable given the allegations of a 'pattern and practice' of such violations.").

Since Plaintiff's complaint alleges a "pattern and practice" of meal period and rest break violations—and specifies that meal period violations were "regularly" occurring—the Court is satisfied by the 20% percentage, which has been upheld based on similar pleading language and called "conservative" by this district. *See Salazar v. PODS Enterprises, LLC*, No. EDCV 19-260 MWF (KKx), 2019 WL 2023726, at *3 (C.D. Cal. May 8, 2019) ("Plaintiff alleges that he and other employees were '*regularly* required to work through their meal periods' . . . . based upon these allegations, the Court concludes that [a] reasonable, conservative assumption is one violation per week."); *Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 974–75 (E.D. Cal. 2023) ("At the outset, the court notes that a defendant is not 'required to comb through its records to identify and calculate the exact frequency of violations' . . . . '[C]ourts in the Ninth Circuit have frequency held a violation rate between 20% and 60% to be reasonable when a plaintiff claims a "pattern and practice" of violations.'" (quoting *Lopez v. Aerotek, Inc.*, No. 14-cv-00803 CJC, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015), and *Sanchez v. Abbott Laboratories*, No. 2:20-cv-01436 TLN (AC), 2021 WL 2679057, at *4 (E.D. Cal. 2021)).

Plaintiff also argues that "Defendant failed to provide the actual rate of pay for each class member." *See Mot.* 11:10–22. First, "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation." *Hernandez v. Nuco2 Mgmt., LLC*, No. 1:17-cv-01645 LJO (JLT), 2018 WL 933506, at *5 (E.D. Cal. Feb. 16, 2018). Plus, Defendant did not just use the average rate of pay, Defendant used a lower, 25th percentile rate of pay. *See Estévez Decl.* ¶¶ 13, 15.

The Court finds that the use of a 20% meal period and rest break violation rate, and the use of the 25th percentile base hourly rate, to be assumptions made with "reasonable ground underlying them." *See Arias*, 936 F.3d at 927 ("An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount'" . . . . assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" (quoting *Ibarra*, 775 F.3d at 1199)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

D.    Failure to Reimburse Business Expenses

To calculate the failure to reimburse claim, Defendant determined that it had "employed at least 505 non-exempt employees in California who worked at least 11,050 employee-months" during the four-year period. *See Notice of Removal* ¶ 53. Defendant then estimated that the alleged unreimbursed business expenses totaled to at least $276,250, based on the calculation of "11,050 aggregate employee months x $25.00 per month." *Id.* ¶ 54. Defendant cites to *Vallejo v. Sterigenics U.S., LLC*, No. 3:20-cv-01788-AJB-AHG, 2021 WL 2685348, at *6 (S.D. Cal. Jun. 29, 2021), for the proposition that when Plaintiff provides no details regarding total expenses, then Defendant may assume each employee incurred cell phone expenses of $25 each month. *See Notice of Removal* ¶ 54.

Here, however, Plaintiff points out that the complaint did in fact provide insight into the violation frequency. *See Mot.* 12. Plaintiff pleads that there was a "systematic, company-wide policy and practice of . . . [f]ailing to indemnify employees for necessary business expenses incurred" and that "[t]hroughout the statutory period, Defendants wrongfully required Plaintiff and the Class to pay expenses that they incurred in direct discharge of their duties for Defendants without reimbursement, such as the *occasional* use of personal cellular telephones for work purposes." *See Compl.* ¶¶ 14, 18 (emphasis added).

Since Plaintiff used this limiting language, the Court disagrees with Defendant's application of $25 for every month. *See, e.g., Cocroft v. EquipmentShare.com Inc.*, No. 24-cv-00645 BAS (AHG), 2024 WL 3877274, at *10 (S.D. Cal. Aug. 19, 2024) ("Plaintiff's limiting language of 'time to time' [to describe cell phone expenditure violations] precludes a 100% violation rate."). To better align with the complaint, Plaintiff pushes for $5 a month as a "more reasonable estimate" of employee cell phone usage. *See Reply* 10:21–11:4. The Court agrees.

Accordingly, the Court applies $5 per month—which better follows the limiting language in Plaintiff's complaint—resulting in a total of $55,250 in cell phone expenditures (11,050 employee months x $5.00 per month).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

     E.    <u>Waiting Time Penalties</u>

In calculating waiting time penalties, Defendant identified that "[f]rom February 28, 2021 to January 5, 2024, 138 putative class members separated from their employment with Defendant," so "assuming all 138 terminated employees are owed 30 days of waiting time penalties at each of their respective average base hourly rates of pay during their last 30 days in the timekeeping data, Plaintiff's waiting time penalty claim places at least $803,822 in controversy." *Notice of Removal* ¶ 60 (emphasis omitted).

To begin the waiting time analysis, the Court consults Plaintiff's complaint. *See Ibarra*, 775 F.3d at 1197 ("In determining the amount in controversy, courts first look to the complaint."). Plaintiff alleges that "during the relevant time period, Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." *Compl.* ¶ 62. Plaintiff also claims that "Defendants maintained a systematic, company-wide policy and practice of: . . . [w]illfully failing to pay employees all minimum wages, overtime wages, meal period premium wages, and rest period premium wages due within the time period specified by California law when employment terminates." *Id.* ¶ 4.

Plaintiff argues that Defendant cannot use a 100% violation rate for wage statement violations because it made poor assumptions such as assuming all 138 former putative class members worked eight hours each day, using the terminated employees' average base hourly rate during their last 30 days of employment ($24.27), and assuming each of the 138 members were not paid 30 days after their termination. *Mot.* 13. To support this contention that Defendant cannot use a 100% violation rate, Plaintiff cites to cases[3] where courts entirely disregarded wait time penalties because the courts disagreed with the 100% violation rate assumed by defendants. *See Mot.* 14:27–15:13; *Reply* 13:26–14:10. However, Plaintiff's cases

---

[3] The Court notes that one of the cases cited, and illustrated, by Plaintiff actually contradicts Plaintiff's argument as the court upheld 100% violation rates for waiting time claims. *See Sanders v. Old Dominion Freight Line, Inc.*, No. 16-CV-2837 CAB (NLS), 2017 U.S. Dist. LEXIS 15936, at *14–16 (S.D. Cal. Feb. 2, 2017) ("[Defendant] uses a 100% violation rate for these [waiting time] claims as well . . . . Because [defendant's] calculation in the opposition is supported by evidence and Plaintiff does not offer any contrary evidence, [defendant] has satisfied its burden to demonstrate by a preponderance of the evidence that the amount in controversy for waiting time penalties is $377,424.00.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

all pre-dated[4] the Ninth Circuit's 2022 clarification that: "[M]erely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative approach." *See Jauregui*, 28 F. 4th at 994 (remanding and deciding that "[a]ssigning a $0 value was improper."). Plus, more recent cases, including cases cited by Defendant, have concluded that 100% violation rates for waiting time penalties can be warranted. *See Cocroft*, 2024 WL 3877274, at *9 (collecting cases and finding that "[b]ecause the Court has found 25% to 75% violation rates for Plaintiff's claims for fictitious meals, rest breaks, and unpaid minimum wage and overtime wages, one violation per pay period is reasonable."); *Gonzalez v. Barnard Construction Co.*, No. 22-CV-00534 AJB (KSC), 2022 WL 17061065, at *3 (S.D. Cal. Nov. 17, 2022) ("[O]ther district courts have concluded that allegations of the willful failure to timely pay final wages . . . were sufficient to support . . . a 100% rate."). And at least one court has concluded that when a defendant limits its waiting time calculation to the number of "separated" employees (like here), then the defendant is making a more specific assumption than a blanket 100% violation rate. *See Gonzalez*, 2022 WL 17061065, at *3 ("Defendants calculated the waiting time penalties using only the number of class members . . . separated from employment . . . . This is not the full class size, and thus, not a 100% violation rate.").

Given the facts pleaded in this case (that Defendant had a "systematic, company-wide policy and practice" of "[w]illingly failing to pay" all wages "when employment terminates" and that "Defendant failed, and continue[s] to fail to pay terminated Class Members, without abatement all wages required to be paid by California Labor Code [§§] 201 and 202," *see Compl.* ¶¶ 4, 62), the Court concludes that Defendant's waiting time calculation of $803,822, tied to the number of terminated former employees, is sufficient. *See Arias*, 936 F.3d at 927 ("[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover . . . . An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less' than the requisite . . . amount . . . .").

---

[4] In its opposition, Defendant observes that Plaintiff consistently relied on "outdated" cases throughout its motion to remand. *Opp.* 12:5–14:14. The Court agrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|

| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* |
|---|---|

F.    <u>Wage Statements</u>

Plaintiff's seventh cause of action is derivative of Plaintiff's first through sixth claims and is based on Labor Code § 226(a). *Compl.* ¶ 67–74. Labor Code § 226(a) requires employers to provide employees with accurate itemized wage statements and allows recovery for "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." *See* Labor Code § 226.

To calculate the amount in controversy for inaccurate wage statements, Defendant identified there were 6,167 aggregate pay periods (342 first pay periods and 5,825 subsequent pay periods) between February 28, 2023 and December 10, 2023. *Notice of Removal* ¶ 66. Defendant thereby calculated that Plaintiff's wage statement claim places at least $599,600 in controversy. *Id.* ¶ 66.

Plaintiff, in his complaint, alleged that "Defendants maintained a systematic, company-wide policy and practice of . . . [f]ailing to provide employees with accurate, itemized wage statements containing all the information required" and that Defendant "intentionally and willfully failed to provide employees with complete and accurate wage statements." *Compl*. ¶¶ 4, 69. According to Plaintiff, Defendant's wage statement deficiencies included—"among other things"—a "failure to correctly identify the gross wages," a "failure to list the true 'total hours worked," and a "failure to list the true net wages earned." *Id.* ¶ 70.

Plaintiff bases its argument against Defendant's calculation on an omission in Plaintiff's complaint: "Plaintiff did not, however, allege the frequency of such violations." *See Mot.* ¶ 14–15. Plaintiff provides no alternative calculation for the Court to consider but instead seemingly asks the court to assign a $0 value to the wage statement claim for the purposes of the amount in controversy. *See id.* (lacking any alternate calculation or method of calculation); *Reply* 13–14 (same). Yet, under recent Ninth Circuit precedent, this is something the Court cannot do. *See Jauregui*, 28 F. 4th at 994 ("Importantly, th[e] [a]mount at stake' does not mean likely or probable liability; rather it refers to *possible* liability . . . . [M]erely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative assumption." (quotation marks omitted)).

Since Defendant provided evidence of pay periods and split the total into initial pay periods and subsequent pay periods—and plaintiff provided no alternative assumptions for the Court to evaluate— the Court finds that Defendant has carried its preponderance of the evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

burden here in establishing $599,600 in controversy for Plaintiff's wage statement claim.  *See Serrieh*, 707 F. Supp. 3d at 977–78 ("[D]efendant argues that courts . . . have found 100% violation rates to be appropriate . . . because wage statements claims are 'derivative' of meal or rest period violations.  The court finds a 100% violation rate to be appropriate here." (citations omitted)).

      G.   <u>Attorneys' Fees</u>

In its notice of removal, Defendant uses "a conservative 25% benchmark figure for attorneys' fees."  *See Notice of Removal* ¶ 71.

The Ninth Circuit has "long held" that "attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy," and that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Arias*, 936 F.3d at 927.  A defendant has "the burden" of establishing future attorneys' fees "by a preponderance of the evidence."  *See id.* at 928.  "[T]here is no dispute that at least some of the California wage and hour laws . . . entitle a prevailing plaintiff to an award of attorneys' fees."  *Id.*; *see Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[Plaintiff] demanded attorneys' fees permitted by California law.  *See* Cal. Labor Code §§ 218.5, 226, 1194.  Because the law entitles [plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees . . . must be included in the amount in controversy.").

Plaintiff cites outdated cases and asks the Court to "limit fees" to the "time of removal," thereby disregarding any future attorneys' fees.  *See Reply* 20–21.  The Ninth Circuit, however, has explicitly rejected that method.  *See Fritsch*, 899 F.3d at 794 ("Because the law entitles [plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy.  Therefore, the district court's conclusion that, as a matter of law, the amount in controversy included only . . . attorneys' fees incurred up to the time of removal and could not include any future fees, was incorrect.").

Plaintiff also argues that "Defendant's inclusion of the alleged amounts in controversy for meal and rest period premiums and waiting time penalties in calculating the attorneys' fees estimate [was] improper."  *See Mot.* 16:11–20.  Plaintiff provides no alternative method of calculating attorneys' fees but asks the Court to entirely "strike" the attorneys' fees estimate.  *See id.* 16:18–20; *Reply* 14–15.  Since Plaintiff demanded attorneys' fees through many of its causes of action, *see Compl.* ¶¶ 38, 46, 59, 66, 74, it would be unreasonable to assume that no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-02977 | Date | September 25, 2024 |
|---|---|---|---|
| Title | Eduardo Garcia v. William Scotsman, Inc., *et al.* | | |

attorneys' fees are at stake in this litigation. *See Fritsch*, 899 F.3d at 794; *Arias*, 936 F.3d at 928 ("[Plaintiff] seeks recovery of attorneys' fees, and there is no dispute that at least some of the California wage and hour laws that form the basis of the complaint entitle a prevailing plaintiff to an award of attorneys' fees . . . . The district court thus erred in excluding prospective attorneys' fees from the amount in controversy.").

Defendant argues for the use of 25%, citing to wage and hour cases relying on that percentage as an attorneys' fees benchmark. *See Notice of Removal* ¶ 69–71. The Ninth Circuit has rejected a "per se rule" that the attorneys' fees in controversy in class actions is 25%. *See Fitsch*, 899 F.3d at 796, n.6 (cautioning that a "per se rule is inappropriate" but noting that "[w]e do not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy").

Here, the Court need not determine the exact attorneys' fees percentage because the claims for unpaid minimum wages ($767,524), liquidated damages ($510,756), overtime ($333,861), meal periods ($890,819), rest breaks ($918,255), waiting time ($803,822), reimbursement failure ($55,250), and wage statements ($599,600) already total to $4,879,887 even omitting attorneys' fees. Thus, attorneys' fees as low as 3% ($120,133) would be sufficient to meet the amount in controversy requirement under CAFA. In a similar situation, the court in *Serrieh* determined that since the "estimate of damages and penalties" already added up to $4.3 million without attorneys' fees, it was "reasonable to assume" that attorneys' fees as low as 16% ($700,000) would reach the $5 million controversy requirement. 707 F. Supp. 3d at 980; *see also Jauregui*, 28 F. 4th at 994 ("[M]erely preferring an alternative assumption is not an appropriate basis to zero-out a claim . . . ." (quotation marks omitted)). Certainly, it is reasonable here to assume that attorneys' fees would exceed 3% if plaintiff prevailed in the case.

In sum, the Court concludes that Defendant has carried its burden to establish by a preponderance of the evidence that the amount in controversy is met.

IV.    <u>Conclusion</u>

For the foregoing reasons, Plaintiff's motion to remand is **DENIED**.


**IT IS SO ORDERED.**